NOT DESIGNATED FOR PUBLICATION

No. 122,728

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GAYLON R. HARMAN and SHEILA L. RICHARDS,
*Appellants*,

v.

JEFFREY L. SMITH,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed May 14, 2021. Affirmed.

*Cody R. Smith*, of Hutchinson, for appellants.

*Gregory D. Bell*, of Bell and Robinson LLC, of Hutchinson, for appellee.

Before POWELL, P.J., GREEN and HILL, JJ.

PER CURIAM: Gaylon R. Harman and Sheila L. Richards (Buyers) appeal the district court's judgment in favor of Jeffrey L. Smith (Seller) following a bench trial about a purchase of real estate. Buyers purchased a single-family home located in Hutchinson, Kansas, and experienced problems with the home's septic system. Buyers sought damages for fraud through silence or, alternatively, sought reformation of the real estate-purchase contract for unilateral mistake of material fact. Because we conclude that Buyers have failed to meet their burden of proof on either theory, we affirm.

1

In early 2014, Seller bought the home in Hutchinson from Marvin Bascett. Seller did not have any inspections done on the house and made a cash purchase of the home. Bascett told Seller that he had the septic system pumped out in late 2013.

The wastewater system on the property is intended to work as follows: The wastewater from the house travels through a wastepipe underground and into a septic tank located in the yard. The wastewater is treated in the septic tank. After treatment, the remaining water then travels through the lateral pipe into a lateral field and then into the soil for absorption. The septic system for this house only had one lateral, which is not common. If the lateral system fails, the wastewater will follow the course of least resistance. This means it could back up into the house, in the septic tank, or surface in the yard.

When Seller first bought the house from Bascett, Bascett told him that the septic lateral system extended onto the property of a neighbor, Jeff Newsum. Newsum introduced himself to Seller when Seller was first moving in. Newsum made sure that Seller knew that Seller's septic system extended onto Newsum's property. Newsum said that he did not have a problem with the lateral pipe being on his property.

Seller lived in the home from early 2014 to December 2015. Seller lived in the house with his girlfriend Stacy Ferrell and her two children. Seller never experienced any problems with the septic system. The system never backed up, never needed any repairs, and never needed to be pumped out. Seller never had a contractor work on the septic system.

In late 2015, Buyers approached Seller about purchasing his home. At trial, Buyers testified that they visited the home two or three times before buying, but Seller and Ferrell testified that Buyers visited the home six to eight times.

Seller testified that he showed Buyers specifically where the lateral pipe went from the septic tank, under the fence, and extended onto Newsum's property. Seller told Buyers that he never had any problems with Newsum regarding the lateral being on Newsum's property.

In December 2015, Buyers entered into a contract with Seller for the purchase of the house. On January 13, 2016, a Reno County Health Department inspector met Seller at the property and conducted an inspection of the septic system and the water well system. Seller did not accompany the inspector during the inspection and did not show the inspector around the property. Seller did not tell the inspector where the working lateral was. The inspector saw some old laterals on the property which were no longer in use, but he did not discover the current operating lateral which extended onto the neighbor's property. The Health Department did not have records of the location of the laterals. As a result, the inspector checked only the visible old laterals, which were not in use. When the Health Department does not have records of the septic system and its laterals and their locations, then inspectors rely heavily on the person who meets them on the property for information.

In addition to the septic inspection, the inspector discovered code violations relating to the well system. Seller hired a contractor to correct the violations in the drinking water well. The Health Department also discovered a second drinking water well on the property under a decorative structure.

Buyers moved into the house on January 18, 2016. Two days later, Buyers had an inspection performed on the furnace. The inspection showed that the furnace needed replacing. Buyers and Seller then agreed to an addendum to the contract which reduced the home purchase price by $5,500, that is, the cost of replacing the furnace.

Newsum introduced himself to Buyers after they moved in, just as he had done with Seller two years earlier. When Newsum talked to Buyers about their septic system, Buyers told Newsum that they did not know that their lateral extended onto his property. At trial, Newsum testified that Seller never complained about the septic system before he moved out and that Newsum never asked Seller to remove the lateral.

A few weeks after they moved in, Buyers began experiencing issues with the septic system failing. Water was surfacing in the yard, and the septic tank was completely full. Buyers contacted a local wastewater system installer named Ron Vincent. Vincent told Buyers that the laterals that the lateral portion of the septic system was failing, causing the sewage to fill the septic tank and surface in the yard.

When the house was built in 1978, no county code or regulation prohibited the lateral from being on Newsum's property. But Reno County code currently requires an easement or permission of record for septic system laterals to extend to a neighbor's property. Thus, when Vincent prepared his estimate for Buyers, he told them that he could not repair the system. He had to replace it instead. Between six to eight months after closing, Buyers called Seller to tell him that Newsum wanted the lateral moved off Newsum's property.

Buyers filed suit against Seller in Reno County District Court, seeking damages. They alleged that Seller had committed fraud by silence or, in the alternative, the contract must be reformed because of unilateral mistake. After a bench trial, the district court concluded that Buyers did not meet their evidentiary burden.

Buyers timely appeal.

*Did the District Court Err by Arbitrarily Disregarding Undisputed Evidence?*

Buyers argue that the district court erred by arbitrarily disregarding evidence of intent. On the other hand, Seller contends that Buyers did not meet their burden of proof at trial and are now asking the appellate court to reweigh the evidence.

On appeal, appellate courts generally review district court findings of fact to determine whether they were supported by substantial competent evidence. *Schlaikjer v. Kaplan*, 296 Kan. 456, 468, 293 P.3d 155 (2013) (citing *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 [2009]). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019).

When a district court finds that a party did not meet its burden of proof, that is a negative factual finding.

> "In the absence of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice, the negative finding of a district court will not be disturbed on appeal. An appellate court may not nullify a district court's disbelief of evidence, nor may it determine the persuasiveness of evidence that the district court may have believed. [Citation omitted.]" *In re Estate of Rickabaugh*, 305 Kan. 921, 935, 390 P.3d 19 (2017).

When a verdict or district court decision is challenged for insufficiency of evidence or as being contrary to the evidence, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the verdict will not be disturbed on appeal. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

Buyers argue that Seller committed fraud by silence. The elements of fraud by silence are the following: (1) The defendant had knowledge of material facts that the plaintiff did not have and could not have discovered by the exercise of reasonable diligence; (2) the defendant was under an obligation to communicate the material facts to the plaintiff; (3) the defendant intentionally failed to communicate the material facts; (4) the plaintiff justifiably relied upon the defendant to communicate the material facts to the plaintiff; and (5) the plaintiff sustained damages as a result of the defendant's failure to communicate the material facts to the plaintiff. *Stechschulte v. Jennings*, 297 Kan. 2, 21, 298 P.3d 1083 (2013); PIK Civ. 4th 127.41.

Alternatively, Buyers argue that the district court should reform the contract based on unilateral mistake.

"It has long been the law that a written instrument may be reformed where there is ignorance or a mistake on one side and fraud or inequitable conduct on the other, as where one party to an instrument has made a mistake and the other knows it and fails to inform him of the mistake or conceals the truth from him. Where, unknown to one of the parties, an instrument contains a mistake rendering it at variance with the prior understanding and agreement of the parties, and the other party learns of this mistake at the time of the execution of the instrument and later seeks to take advantage of it, equity will reform the instrument so as to make it conform to the prior understanding. Thus, unilateral mistake may be the basis for relief when it is accompanied by the fraud of, or is known to, the other party. 66 Am. Jur. 2d, Reformation of Instruments § 28." *Andres v. Claassen*, 238 Kan. 732, 740, 714 P.2d 963 (1986).

On appeal, Buyers argue that they are entitled to relief under either fraud by silence or on unilateral mistake if Seller knew (1) that the septic system was faulty and (2) that the system's lateral was located on the neighbor's property, and then he intentionally failed to communicate the facts alleged in parentheses (1) and (2) to Buyers. Responding to the first material fact, Seller argues that Buyers produced no evidence to

support their contention that Seller knew that the septic system was not operating properly. On the second material fact, Seller contends that he did, in fact, tell Buyers that the lateral extended onto Newsum's property. Thus, Seller argues that the question turned on the credibility of witnesses, and Seller contends that appellate courts are precluded from evaluating witness credibility.

A review of the record shows that Buyers presented the district court with no direct evidence that Seller knew that the septic system was faulty. To establish the first element of fraud by silence on whether the septic system was faulty, Buyers needed to show that Seller knew that it was faulty. Both Seller and Ferrell testified that they had no problems with the septic system while they lived there. During Newsum's testimony, Buyers' counsel asked Newsum if Seller had ever complained to him about the septic system. Newsum said that he did not. No other direct evidence addressed if Seller knew that the septic system was faulty.

But on the other contested fact, if Seller told Buyers the location of the lateral, Buyers presented evidence that (1) the lateral system extended onto Newsum's property, (2) Seller knew where the lateral was located, and (3) Seller failed to communicate this fact to Buyers. The first two facts are uncontested. In fact, Seller himself testified that he knew about the lateral's location when he first moved in. But Buyers and Seller gave contradictory testimony about if Seller told Buyers where the lateral was located. Buyers assert that the district court erred by seemingly balancing the parties' testimonies against each other without accounting for other witnesses. Buyers argue that the district court arbitrarily disregarded undisputed evidence.

First, Buyers needed to establish that Seller failed to disclose the location of the lateral. Buyers contend that the district court focused solely on the parties' testimonies, arbitrarily ignoring Newsum's testimony. Buyers describe Newsum as a neutral witness

7

who, in essence, could serve as a tiebreaker from his testimony that Buyers did not know where the lateral was located when they moved in.

Buyers' argument is unpersuasive because the district court's journal entry states that "neither the parties *nor their witnesses* appeared to be untruthful." (Emphasis added.) This statement echoes the district judge's statement from the bench, describing testimony as follows: "I don't find that *any witness or party* was deceptive, or attempted to be untruthful." (Emphasis added.) The district court's language shows that it did not ignore Newsum's testimony.

Second, Buyers needed to establish that if Seller failed to explain where the lateral was located, then this failure to communicate was intentional. The district court's short journal entry states only that Buyers did not meet their burden of proof, but it does not specify which element was unproven: either that there was a failure to communicate or that the failure to communicate was intentional. Supreme Court Rule 165 (2021 Kan. S. Ct. R. 230) imposes on the district court the duty to provide adequate findings of fact and conclusions of law on the record to explain the court's decision on contested matters. See K.S.A. 2020 Supp. 60-252. Generally, a party bears the responsibility to object to inadequate findings of fact and conclusions of law to give the district court an opportunity to correct any alleged inadequacies. *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016). When no objection is made to a district court's findings of fact or conclusions of law on the basis of inadequacy, an appellate court can presume the district court found all facts necessary to support its judgment. *State v. Jones*, 306 Kan. 948, 959, 398 P.3d 856 (2017).

On the issue of intent, Buyers presented no direct evidence, but they argue that the district court should have inferred "Seller-defendant's pattern of failing to disclose material facts about the property" from circumstantial evidence. Buyers point to the fact that Seller did not tell the county inspector about the correct location of the lateral and did

8

not tell either the Buyers or the inspector of a second well on the property. But the district court's decision is not necessarily premised on arbitrarily disregarding this evidence. The district court may have determined the evidence was not sufficiently persuasive to establish intent. This court may not determine the persuasiveness of evidence that the district court may have believed. *In re Estate of Rickabaugh*, 305 Kan. at 935. Seller testified that he showed Buyers specifically where the lateral pipe went from the septic tank, under the fence, and extended onto Newsum's property. In sum, Buyers are asking this court to reweigh and reassess the evidence, which we cannot do.

Affirmed.